CLAPP, et al., Respondents, v. GILT EDGE CONSOLIDATED
MINES COMPANY, et al., Appellants.

(144 N. W. 721.)

1. **Trial—Instructions—No Exceptions—Law of Case.**
Instructions on the measure of damages, which were not ex-
cepted to, become the law of the case, whether right or wrong,
and hence cannot be objected to on appeal.

2. **Contract—Action for Breach—Sufficiency of Evidence.**
In an action for breach of a contract to allot plaintiff a cer-
tain number of shares of common stock in a corporation there-
after to be created, in consideration of plaintiff's not redeeming
corporate property from a foreclosure sale, evidence held to
show that the consummation of such contract was not condi-
tioned upon the making of a similar contract between defend-
ants and bondholders of the existing corporation.

3. **Contract—Rescission—Conditions Precedent—Restoration of Par-
ty's Position.**
Plaintiffs, judgment creditors of a mining corporation, the
property of which had been sold on foreclosure, contracted with
defendants, in consideration of the allotment to plaintiffs of a
certain number of shares of stock in a corporation to be
thereafter created, not to redeem the property. Defendants
knew that plaintiffs were procuring funds to redeem largely by
subscription, and, when said contract was made, and in reliance
thereon, they released such subscriptions. One of the defend-
ants afterwards notified plaintiffs that defendants would be no
longer bound by the contract; plaintiffs being then unable to
procure funds with which to so redeem. Held, that such notifi-
cation could not operate as a rescission of the contract, since
plaintiffs were not thereby restored to their position when the
contract was made, as required by Sec. 1285, Civ. Code.

4. **Contract—Sale of Personalty, or Subscription to Stock—Evidence.**
In a suit for breach of contract to allot plaintiffs shares in
a corporation to be thereafter created, in consideration of
plaintiffs' not redeeming corporate property sold on foreclosure,
evidence held to show the transaction between the parties was
a written subscription to take corporate shares in a corporation
not then existing.

5. **Frauds, Statute of—Sale of Personalty—Stock Subscription Con-
tract.**
A subscription to take a certain number of shares of stock in
a corporation not yet created but to be organized, is not within
the statute of frauds (Civ. Code, Sec. 1309), relating to sale of
personalty for a price not exceeding $50, and hence authority
to make such contract need not be in writing, under Sec. 1667,
Civ. Code.

**6.  Corporations—Promoters—Agent of Subscribers to Stock.**

A promoter of a proposed corporation, who solicits and procures stock subscriptions, is the agent of the body of the subscribers, to hold the subscriptions until the corporation is formed, and then to turn them over to it without further act of delivery by subscribers; hence, delivery of a subscription to such promoter is a complete delivery constituting a binding contract as between the subscribers.

Polley, J., taking no part in the decision.

(Opinion filed Dec. 30, 1913.  Rehearing denied Feb. 7, 1914.)

Appeal from Circuit Court, Lawrence County. Hon. WILLIAM G. RICE, Judge.

Action by Moses E. Clapp and others against the Gilt Edge Consolidated Mines Company, J. S. Ford, and others. From a judgment for plaintiffs against defendant Ford, and from an order denying him a new trial, he appeals, and the other defendants appeal from an order granting a new trial after judgment in their favor. Affirmed, and remanded for a new trial as to defendants other than Ford.

*Eben W. Martin,* and *Norman T. Mason,* for Appellants.

The prior correspondence between the parties shows that the word "deal" referred to a proposition requiring assent both of bondholders and respondents as judgment holders.

A proposal is revoked by the failure of the acceptor to fulfill a condition precedent to the acceptance.  Rev. Civ. Code, Sec. 1216.

Appellant's original offer of February 8th contains a similar condition to that embodied in his telegram of February 16th.

The surrounding circumstances clearly show that the word "deal" referred to a proposition requiring assent both of the bondholders and of respondents as judgment holders.

The wording of the telegram of February 16th demands the meaning of the word "deal" which is insisted upon by appellants.

Respondents' answering telegram of February 16th disproves their own theory of construction.

If respondents' theory is correct, and if the condition in appellants's telegram of February 16th referred only to the closing of a deal between himself and respondents alone, then appellant's telegram acceding to respondents' terms closed and completed the contract, and there was no occasion whatever for any answering tel-

egram from respondents. Under the construction of the lower Court this answering telegram is given no effect whatever.

Respondents alleged acceptance is not only qualified and therefore no acceptance but enforces appellant's contention as to what was meant by the word "deal."

It is most unreasonable to suppose that Ford would enter into an unconditional contract with the plaintiffs agreeing to give them 180,000 shares of stock without regard to whether he could obtain the consent of the bondholders to his stock proposition, and without regard to the terms he might be compelled to give in order to obtain such consent. The correspondence clearly shows that he hoped to obtain that consent in exchange for certain stock of a certain character.

Conceding that there was a contract, it was rescinded. Ford's letter, dated March 18th, was notice given to respondents in ample time before the expiration of the year of redemption, given within a very short time after appellant Ford learned that the consummation of the deal did not depend "almost altogether" or at all upon the judgment creditors, but upon the bondholders instead.

Alleged contract was both unauthorized, and invalid under the Statute of Frauds. Rev. Civ. Code, Sec. 1349; Talbot v. Boyd, 88 N. W. Rep., 1928 (N. D.); Franklin v. Matoa Gold M. Co., 158 Fed. Rep., 941 (CCA 8th.); (Rev. Civ. Code, S. D., Sec. 1309, 1238.); Rev. Civ. Code, Sec. 1667; Mechem Agency, Sec. 363.

To take an exchange out of the statute, the buyer must "at the time of sale" pay a part of the price. Franklin v. Matoa G. M. Co., 158 Fed., 941, (C. C. A., 8th.); Raymond v. Colton, 43 C. C. A., 501; 104 Fed. 219, (2d.); Raymond v. Colton, 52 C. C. A., 382; 114 Fed. 863, (2d.); Jackson v. Tupper, 101 N. Y., 515; 5 N. E., 65. The alleged ratification is invalid both under the Statute of Frauds and under the Statute as to ratification. Franklin v. Matoa G. M. Co., 158 Fed., 941, (C. C. A., 8th.) Rev. Civ. Code, Sec., 1668.

There was and could be no ratification, because the original contract did not purport to be made on behalf of these three defendants.

If the alleged agent does not assume to act for another, but acts solely on his own account, then, as to such other, the transaction is inter *alios acta,* and he cannot make himself a party to it by his ratification of the act.   31 Cyc., 1251.

## IN RELY.

A stock subscription is for the benefit of the corporation, to which the corporation, when organized becomes a party, and which is enforced by suit in the name of the corporation. And if one subscriber fails to pay his subscription, (which on Respondent's theory is the case here), such subscription cannot be enforced by suit in the name of the other subscriber or subscribers.

*R. N. Ogden, Keller & Stanley, for Respondents.*

The contract was not rescinded. Ford's notice of March 18th did not purport to be a notice of rescission, but a general notice of the invalidity of all negotiations from the beginning. There is no return or offer to return the things of value received by Ford, and even though it were an attempted rescission, it was not a prompt and timely rescission, as required by the statute. Civil Code, Sec. 1285. 29 Am, & Eng. Enc. of. Law, 984; Dowagiac Mfg. Co. v. Higginbotham, 15 S. D. 547.

The contract was not invalid under the Statute of Frauds.. Vol. 29 Am. & Eng. Enc. of Law, P. 961 and cases cited in note. Gadsden v. Lance (S. C.) 37 Am. Dec. 548; Rogers v. Burr, (Ga.) 31 S. E. 438, 70 Am. St. Rep. 50; Webb vs. Ry. Co. (Md.) 39 Am. St. Rep. 396; Peninsula Co. v. Cody, (Mich.) 126 N. W., 1053. I Cook on Corporations, Sec. 52. 29 Am. and Eng. Enc. of Law, page 961. The correspondence itself between Lowry, representing the plaintiffs, and Ford, representing the defendants, clearly shows that both sides recognized the fact that Ford was representing not only himself but also his associates.

McCOY, J.   It appears from the record that on and prior to the 6th day of April, 1910, a corporation, known as the Gilt Edge Maid Gold Mining Company, was indebted in the sum of $36,496 on account of various miner's liens which had been reduced to judgment in one joint action; that a foreclosure sale of the mining properties of said corporation had been made thereunder on the 6th day of April, 1909, and that the time for redemption from such foreclosure sale would expire on the 6th day of April,

1910; that said corporation at said time was also indebted in the sum of $44,000 represented by certain bonds owned by various parties, and which bonds were secured by mortgage upon all the mining properties of said corporation running to and in the name of the Minnesota Loan & Trust Company, trustee; that said corporation was also indebted to respondents, the plaintiffs in the action, in the sum of $18,845, and which indebtedness had been reduced to judgment; that it was necessary for the Minnesota Loan and Trust Company, trustee, and said plaintiffs, in order to preserve their equities against said Corporation, to make redemption from said miners' lien foreclosure sale; that on or about the 5th day of April, 1910, the said Minnesota Loan & Trust Company, by some arrangement with defendants, made redemption from such foreclosure sale with funds furnished by defendants; that, after the expiration of the said time for redemption, the defendants Ford, Beaman, and Hippachs formed and organized defendant corporation, another corporation known as the Gilt Edge Consolidated Mines Company, with a capitalization of 3,000,000 of shares of the par value of $1 each. So far there seems to be no material dispute in relation to the facts. It is claimed by plaintiffs that they were ready, able, and willing to redeem from said foreclosure sale and had every intention of so doing; that a short time prior to the expiration of the said time for redemption, the plaintiffs and defendants entered into a contract, through certain written correspondence with defendant Ford, representing the other defendants, whereby defendants Ford, Beaman, and Hippachs promised and agreed to give and allot to plaintiffs 180,000 common shares of capital stock in the Gilt Edge Consolidated Mines Company, said Corporation to be thereafter organized and promoted by said defendants, for said judgment owned by plaintiffs, on condition that plaintiffs would refrain from redeeming from said foreclosure sale; that plaintiffs, after entering into said contract, and by reason and in execution thereof, were induced to and did refrain from making such redemption; that thereafter the said defendants procured the said Minnesota Loan & Trust Company to make said redemption, and thereafter organized and promoted said Gilt Edge Consolidated Mines Company corporation; that said Beaman became the president and said Ford the secretary thereof; that notwithstanding the formation of said corporation

and the said promises and agreements, the said Gilt Edge Consolidated Mines Company has succeeded to the interests of said other defendants, and said defendants and all of them have refused and still refuse and neglect to deliver to plaintiffs the said 180,000 shares of said stock to the possession of which they are entitled; that said new corporation had full knowledge of said contract with plaintiffs and accepted all the benefits thereof, and ratified the same, and became bound to carry out the terms thereof; that by reason of such refusal plaintiffs have been damaged in the highest market value of said stock between the 13th day of April, 1910, and the date of trial. The defendants, while admitting that the defendant Ford made certain propositions in writing in letters to plaintiffs, contend that no contract for the delivery of said stock was ever consummated between plaintiffs and defendant Ford; that the alleged contract was made upon a condition which was never complied with; that, if any contract was made, it was rescinded; that, even if there was an unrescinded contract as between the plaintiffs and the defendant Ford, the same was, as against the defendants Beaman, Hippachs, and the Gilt Edge Consolidated Mines Company, unauthorized and invalid under the statute of frauds; that the original contract did not as to said defendants become valid by ratification; that conversion does not lie upon a mere contract for the sale and delivery of stock not yet in existence, thereby involving the highest market value as the measure of damages, but that the remedy in such a case is an action for breach of contract. On the trial the court directed a verdict in favor of plaintiffs against the defendant Ford upon all the issues excepting as to the amount of damage sustained. The court also directed a verdict in favor of the defendants Beaman, Hippachs, and the Gilt Edge Consolidated Mines Company. Motion for new trial was made by Ford, and denied, and Ford appeals. Motion was made for new trial by plaintiffs, as against the defendants Beaman, Hippachs, and the Gilt Edge Consolidated Mines Company, which motion was granted, and these defendants also appeal.

Some contention is made that this is an action in conversion and that conversion will not lie to recover the value of shares of stock that were never issued or never came into existence. We are inclined to the view that this is an action for breach of contract and not an action in conversion. It is true that the complaint de-

mands damages for the highest market value between the time of
the demand and the verdict, which is a rule or measure of dam-
age in conversion actions under section 2315, Civil Code. The rule
or measure of damage for breach of contract is prescribed by sec-
tion 2293, Civil Code. There was evidence offered and received
under the highest market rule, and the court instructed the jury
upon the highest market value rule.

[1] So far as appears from the record, this evidence was re-
ceived without objection, and the instructions of the court in this
particular were not excepted to, and therefore became the law of the
case, whether right or wrong. The sufficiency of the evidence to
sustain the verdict as to the amount of the damages awarded is not
questioned upon this appeal.

It is contended by appellants that the contract alleged by re-
spondents was never consummated; that said contract was made
upon a condition that was never complied with. The negotiations
preceding this alleged contract are contained in somewhat volum-
inous written correspondence and telegrams between the respond-
ent Lowry and appellant Ford. This correspondence took place in
February and March, 1910, and on its face purported to be carried
on by Lowry on behalf of all the respondents and by Ford on be-
half of all the defendants, excepting the Gilt Edge Consolidated
Mines Company, which at that time had not yet been organized.
It will serve no useful purpose and would be impracticable to set
out such correspondence in full. The appellants, however, con-
tend that the proposition made by defendant Ford to respondents
to induce respondents to refrain from making such redemption was
only upon condition that the bondholders also agreed to a like
proposition, while on the other hand the judgment holders, the
respondents, contend that the two propositions (that is, the prop-
osition to the bondholders and the proposition to the judgment
holders), as finally agreed upon, were wholly independent of each
other. We are of the view that respondents are right in this con-
tention. The first letter from Ford to Lowry, dated February 8th,
which contained the initial proposition, did state that "if this offer
is accepted by them [meaning the bondholders], I am willing to
make the same offer to yourselves [referring to respondents]."
This letter also contained the statement that the indebtedness be-

longing to the bondholders would be taken into the new corporation and recognized at full face value, while the offer to respondents contained in the letter was to recognize and take over their judgment at one-half, its face value. This proposition was wholly rejected by the respondents, and a new proposition immediately submitted back to appellants, proposing that the said judgment indebtedness be recognized at its full face value the same as made to the bondholders, and which proposition made by respondents contained the statement that this proposition depends entirely upon ourselves and not upon the bondholders. This proposition made back by the judgment holders was the one finally accepted and agreed to between Lowry and Ford, and which became the contract. The proposition made to the bondholders to take their indebtedness at fact value was subsequently referred to in the correspondence as a basis for and in connection with the proposition to recognize the bondholder's indebtedness at its face value. The final telegram to Ford, dated February 17th, was as follows: "Conditioned upon immediate closing of deal will accede to your terms. Answer." To which Lowry immediately replied: "Telegram received. You may consider deal closed so far as Clapp, Turner and myself are concerned. Which telegram I now confirm, your agreement being that you put the judgment holders on the same basis as you do the bondholders, namely, taking in our judgment at face value and giving us stock at the rate of ten cents a share, or 180,000 shares, we have the privilege of either taking the preferred stock or common stock, as per your offer of February 8."

[2] We are of the opinion that the validity of this contract with respondents was in no manner dependent upon whether or not a like contract was finally made between appellants and the bondholders. Some contract, acceptable and satisfactory to appellants was subsequently made with the bondholders but not on the same terms made with respondents.

[3] The respondents next contend that, if any contract was ever made with Ford, the same was subsequently rescinded. It appears that the contract with the judgment holders was closed on February 17th. On March 18th Ford, among other things, wrote Lowry as follows: "This is to advise you that my several propositions to the bondholders and judgment creditors of the Gilt Edge Maid Gold Mining Company, under date February 7 and

February 8, have not been accepted within the time or according to the terms therein specified, and that I consider myself under no obligation to either the bondholders or the judgment creditors by virtue thereof." It is the contention of appellants that this letter constituted a rescission of the contract previously made with the judgment holders. Evidence was offered by the judgment holders tending to show that prior to the negotiations resulting in said contract they had funds subscribed and forthcoming with which to make said redemption, and that when said contract was closed they released such subscribed funds, and that when the said letter of March 18th was received it was not then within their power to secure funds with which to make such redemption. It also appears that Ford knew that respondents were procuring the funds with which to make redemption largely by subscription. Under these circumstances we are of the opinion that a rescission was not made; that respondents were not restored to the position they were in at the time of entering into said contract. Under the circumstances of this case the attempted rescission was not promptly made. Section 1285, Civil Code. Appellants further contend that, if there was an unrescinded contract as between respondents and Ford, the same was, as against the defendants Beaman, Hippachs, and the company, unauthorized and invalid under the statute of frauds. The specific contention being that the alleged agreement was a contract for the sale of personal property for a price in excess of $50; and, where no part of the purchase price was paid and no part of the subject of the sale delivered, the contract was void unless in writing, under Sec. 1309, Civ. Code; and where there is no written authority shown authorizing Ford to enter into ssuch contract for and on behalf of the other defendants, they cannot be bound by his action under the provision of section 1667, Civil Code, providing that: "An authority to enter into a contract required by law to be in writing can only be given by an instrument in writing." It is the contention, however, of respondents that the agreement was not the sale of corporate stock but was in the nature of a subscription to take a certain number of shares of stock in a corporation not then in existence but afterward to be formed, and that as to such a transaction the statute of frauds is not applicable.

[4, 5] We are of the opinion that the contention of appellants is not tenable; that the transaction constituted a subscription

in writing to take a certain number of shares in a corporation not then in existence but thereafter to be organized; that there is no law requiring such a contract to be in writing, and that the same was not within the statute of frauds referred to; and that appellant Ford might have been authorized by parol, by his co-defendants, to enter into such a contract. 29 Am. & Eng. Ency. of Law, p. 961; Thompson, Commentaries on Corporations, vol. 1, §1147; 10 Cyc. 391; 1 Cook on Corporations, §52; Peninsula Co. v. Cody, 161 Mich. 604, 126 N. W. 1053; Gadsden v. Lance, McMul. Eq. (S. C.) 87, 37 Am. Dec. 548; Rogers v. Burr, 105 Ga. 432, 31 S. E. 438, 70 Am. St. Rep. 50; Webb v. Railway Co., 77 Md. 92 26 Atl. 113, 39 Am. St. Rep. 396.

Other assignments of error relate solely to the appellants other than Ford. There were a number of grounds urged by respondents on their motion for a new trial. It does not appear from the record upon what particular ground the motion was granted.

[6] It seems to be generally held that a promotor of a proposed corporation who solicits and procures stock subscriptions, is the agent of the body of the subscribers to hold the subscriptions until the corporation is formed and then turn them over to it without any further act of delivery on the part of the subscribers; and hence a delivery of a subscription to such promoter is a complete delivery so that it becomes *eo instanti* a binding contract as between the subscribers. Minneapolis T. M. Co, v. Davis 40 Minn. 110, 41 N. W. 1026, 3 L. R. A. 796, 12 Am. St. Rep. 701. Carrying out the logical effect of this rule, it would seem that no error was committed, or at least no abuse of discretion was committed, in granting a new trial to plaintiffs.

The judgment and orders appealed from are affirmed, and the cause remanded for new trial as to defendants other than Ford.

POLLEY, J., takes no part in the consideration of this case.