**In the Matter of the Termination of Parental Rights Over T.M.B. and M.A.D., Minor Children.**

**No. 15585.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 7, 1987.

Decided Dec. 9, 1987.

Janice Godtland, Asst. Atty. Gen., Pierre, for the State; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Chris A. Nipe of Bridgman, Larson and Nipe, Mitchell, for children.

Robert W. Swank of Hanson, Stiles, Anderson & Swank, Mitchell, for appellant Mother.

MILLER, Justice.

This is an appeal from an order in which the trial court denied Mother's motion to vacate its prior order terminating her parental rights over her two children. The prior order was entered pursuant to her voluntary petition for termination of parental rights. We affirm.

## FACTS

T.D. is the mother of the children T.M.B. (older son) and M.A.D. (younger son). In August of 1985 a referral was made to the Department of Social Services (DSS) that the older boy was being abused by D.F. (mother's live-in boyfriend). DSS began providing services to mother. In October of 1985, while hospitalized for younger son's birth, mother voluntarily placed older son in foster care. Later in December, Mother brought older son to DSS to give him up for adoption. At this point, the child was placed in foster care. Mother and her boyfriend had been fighting and the child was becoming difficult to handle. After reconciliation with her boyfriend, mother changed her mind and wanted older son back. He was returned to mother's care on January 6, 1986.

On January 21, DSS was notified that the two sons, as well as mother, had bruises. Kathleen Park (social worker) and Deputy Sheriff Doug Kirkus investigated the referral and questioned mother about the bruises. Mother initially indicated that younger son had been squirming around in his crib and had gotten caught, causing the bruise on his jaw, and that older son had received

the bruises on his bottom from falling on the ice.

Mother was told that if she was concerned over the boyfriend's abuse of her and/or the children she could leave the home and go to a "safe house" with the children or that the State could place the children in temporary foster care. At this time, Mother informed the deputy sheriff of outstanding criminal warrants on boyfriend which were later confirmed. Mother further informed the deputy sheriff and social worker that boyfriend had told her if she ever went to the police for any reason, he would kill her and the children. At this point, the deputy called for backup, but the officers were unable to find the boyfriend as he had escaped out a back window of the house. Mother then packed clothes for children, but decided to remain at the house to take her chances with her own safety. The social worker then placed the children in foster care.

At the time the children were taken into foster care they had many bruises. The baby's diaper was dry but his t-shirt which was several sizes too large was wet up to the armpits. His blanket and sleeper had a very foul, sour smell. His hair was oily and stringy.

The next day, social worker took the children to see a medical doctor for an examination. In the physician's opinion, older son's bruises were not caused by a fall and the bruise on the baby's jaw was not caused by his head being caught in the crib. It was discovered later that older boy had been severely spanked by boyfriend and baby had had a bottle thrown at him by boyfriend.

On January 23, 1986, a petition was filed alleging that the children were dependent and neglected. Mother stated on January 28 that she felt she could again work with the DSS because boyfriend was gone. She wanted the children back and she felt that she could handle boyfriend although she was still afraid of him. However, on February 20, 1986, Mother signed a petition to voluntarily terminate her parental rights to her children under the provisions of SDCL ch. 25–5A and appeared before the trial

court on February 21, 1986, to relinquish her parental rights. At that hearing, she appeared with her attorney and verified under oath that she understood the nature and consequences of the relinquishment of her parental rights. She was examined under oath by her attorney, the attorney for the children, and the state's attorney. She clearly and unequivocally stated that she was *voluntarily and knowingly* terminating her parental rights and understood that it was a permanent, irreversible decision, for which she had no reservations.

The order terminating Mother's parental rights was entered February 21, 1986. After the children's fathers had signed powers of attorney consenting to the termination of their parental rights, the court entered an amended order terminating the parental rights of all parents on March 5, 1986. Notice of entry of order was served on all parties on April 10, 1986. The children were placed in an adoptive home on March 26, 1986.

On June 27, 1986, Mother filed a motion and affidavit seeking to set aside the order terminating her parental rights. Appellant now claims that her decision to voluntarily terminate her parental rights was made under the duress and coercion of a third party, her boyfriend D.F. The trial court denied her motion to set aside its prior order and this appeal followed.

## ISSUE

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING MOTHER'S MOTION TO VACATE THE COURT'S ORDER TERMINATING HER PARENTAL RIGHTS. WE HOLD IT DID NOT.

## DECISION

 The mandates of SDCL ch. 25–5A, the voluntary termination of parental rights provisions, are to be met with strict compliance. *Matter of J.M.J.*, 368 N.W.2d 602 (S.D.1985), *rev'd* 379 N.W.2d 816 (S.D. 1985). SDCL 25–5A–18 states generally that the termination of parental rights shall occur if the court finds that termi-

nation is in the child's best interests and that the petitioner is "fully aware of the purpose of the proceedings and the consequences of their act." *J.M.J.*, 368 N.W.2d at 605, *citing* SDCL 25–5A–16 and 25–5A–18. It is the duty of the trial court to determine whether parents are fully aware of the proceeding and consequences of their actions. *J.M.J.*, 379 N.W.2d 816 (S.D. 1985). SDCL 25–5A–19 provides that the order terminating parental rights is conclusive and binding on all parties except that an appeal may be taken within thirty days of the filing of the judgment, decree or order.

Here, Mother did not appeal the entry of the court's March order on her petition. Rather, she claims SDCL 15–6–60(b) permits the court "to relieve a party from a final judgment within a reasonable time for any reason justifying such relief." *J.M.J.*, 368 N.W.2d at 607.

Rule 60(b) is an extraordinary remedy which should be granted only where there has been a showing of exceptional circumstances. *See, generally* 6 J. Moore, Moore's Federal Practice ¶ 60.27(1) (1985); *Farmers Co-op Elevator Ass'n Non-Stock, Big Springs, Neb. v. Stand*, 382 F.2d 224 (8th Cir.1967), *reh'g denied* 390 U.S. 913, 88 S.Ct. 815, 19 L.Ed.2d 887 (1968); *Haggar v. Olfert*, 387 N.W.2d 45 (S.D.1986). The decision to grant or deny a 60(b)(6) motion rests within the "sound discretion of the trial court guided by accepted legal principles applied in light of all the relevant circumstances, and the trial court's exercise of discretion will not be disturbed on appeal except for abuse." *Moore, supra* at 272–73; *see generally Strouse v. Olson*, 397 N.W.2d 651 (S.D.1986); *Haggar, supra; Farmers Co-op Elevator Ass'n, supra*. Relevant factors for our consideration in deciding whether 60(b) relief should be granted include:

> (If relief is sought from a judgment rendered after a trial on the merits,) whether the movant had a fair opportunity to present his claim or defense; whether there are any intervening equities which make it inequitable to grant relief; and any other factor that is relevant to the justice of the judgment under attack, bearing always in mind that the principle of finality of judgments serves a most useful purpose for society, the courts, and the litigants——in a word, for all concerned.

(Citation omitted.)

*Farmers Co-op Elevator Ass'n, supra* at 232.

After considering Mother's arguments and circumstances, we cannot find that the trial court abused its discretion in denying the 60(b)(6) motion to vacate its prior order terminating Mother's parental rights. Her current testimony, although it conflicts with her original testimony, does not negate the prior statements. It failed to adequately refute her prior testimony that the relinquishment of her parental rights was a knowing, voluntary and permanent act. The trial court balanced, weighed, and concluded to not set aside its prior order. We cannot say, as a matter of law, that it erred.

Mother further claims that due process requires an evidentiary hearing on her 60(b) motion and that the trial court erred in refusing such. However, Rule 60(b) does not require an evidentiary hearing. The trial court may hear such motions on the basis of affidavits. 11 C. Wright & A. Miller, Federal Practice and Procedure, § 2865, at 227 (1973); *Connelly v. Franklin*, 50 S.D. 512, 210 N.W. 735 (1926). *See also* 7 J. Moore, Moore's Federal Practice ¶ 60.28(3), at 325 (1987).

Affirmed.

All the Justices concur.