**TRI–STATE REFINING AND INVEST-
MENT COMPANY, INC., Plaintiff
and Appellee,**

v.

**APALOOSA COMPANY, a South Dakota
Business Trust; Sioux Enterprises–Lor-
entz Opdahl; and Lorentz Opdahl, an
Individual Person, Defendants and Ap-
pellants.**

No. 16628.

Supreme Court of South Dakota.

Argued Oct. 17, 1989.

Decided Feb. 14, 1990.

Richard J. Helsper of Erickson, Helsper & O'Brien, Brookings, for plaintiff and appellee.

Rick Johnson of Johnson, Eklund & Davis, Gregory, for defendants and appellants.

MORGAN, Justice.

This joint appeal stems from the litigation as reported in *Tri–State Refining v. Apaloosa Company*, 431 N.W.2d 311 (S.D. 1988) (*Tri–State I*), which decision is referred to for some of the background of this appeal. Apaloosa Company, a South Dakota Business Trust; Sioux Enterprises–Lorentz Opdahl; and Lorentz Opdahl (collectively referred to as Opdahl unless otherwise noted) are appellants and Tri–State Refining and Investment Company, Inc. (Tri–State) is the appellee. Opdahl jointly appeals from the decisions in two separate proceedings. The first is an adverse order entered in a hearing on a Rule 15–6–60(b) motion, seeking to set aside the judgment in *Tri–State I* on the grounds that the trial judge improperly failed to voluntarily recuse himself. The second is the amended judgment entered pursuant to the order of remand in *Tri–State I*, which directed the trial court to redetermine damages for the breach of the lease agreement and recalculation of prejudgment interest. Opdahl appeals only the determination of damages portion of the amended judgment. We affirm the trial courts in both appeals.

Opdahl states the issues thusly:

1. Defendants are entitled to relief under SDCL 15–6–60(b) due to the trial judge's failure to disqualify himself in violation of the Code of Judicial Conduct Canon 3 C.

2. The trial court erred in awarding damages for breach of lease when the lessee failed to prove any proximate harm resulting from the breach of lease.

We will discuss them in that order.

The first issue arises out of a collateral attack on the judgment which Opdahl had failed to overturn in *Tri–State I*. Before discussing the merits of the issue, it is necessary to detail some factual background pertinent to this issue only.

The Honorable Riley W. Connelly (Judge Connelly) presided over the proceedings in *Tri–State I*, including the trial to the court held on March 11, 12, 23 and 24, 1987. Prior to the commencement of the trial, two federal lawsuits were filed naming Judge Connelly, along with the plaintiffs in *Tri–State I*, their attorney, his law firm and a number of John and Jane Does as defendants. One suit, Civ. 87–4010, styled Lorentz Opdahl as plaintiff alleged diversity jurisdiction and a violation of the Federal Civil Rights Acts. The other suit, Civ. 87–4009, styled Sioux Enterprises, A Minnesota Business Trust; Raymond Ehrman, Trustee, Leroy Sveegen, Trustee, as plaintiffs, also alleged federal civil rights violations. Although both suits were filed in the federal clerk of court's office, only Civ. 87–4009 was ever formally served on Judge Connelly, which occurred on February 5, 1987.

Upon being served, Judge Connelly immediately contacted the office of the State Court Administrator, Unified Judicial System in Pierre, South Dakota, and was informed that an attorney would be retained to represent him. A few days later, Judge Connelly was told that Mr. Charles Kornmann (Kornmann) had been appointed to handle his case. On February 9, 1987, Richard J. Helsper (Helsper), the attorney representing plaintiffs in the state action before Judge Connelly, and all of the named defendants in the federal action, *except* Judge Connelly, sent Judge Connelly a courtesy letter informing him that he, Helsper, was filing a motion to dismiss in the federal actions and that Judge Connelly would want to forward this motion to the attorney that was representing him. Indeed, Judge Connelly did forward this correspondence to Kornmann. This letter, the principal basis for Opdahl's attack, along with other correspondence, will be discussed shortly.

The second basis for attack came about from the following scenario. Judge Connelly's attorney, Kornmann, is a registered lobbyist and is required to be in Pierre on a full-time basis during the legislative session. Judge John B. Jones, the federal district judge hearing the federal suits, set the motion hearing for March 2, 1987, a time when Kornmann was performing his lobbying duties and could not leave Pierre. As a favor to Kornmann, and unknown to Judge Connelly at the time, Kornmann arranged for Helsper to state to the court that Judge Connelly joined in the other defendants' motions. Civ. 87–4010, Lorentz Opdahl as plaintiff, was sua sponte dismissed by Judge Jones because of lack of diversity of citizenship and failure to state a cause of action under the Federal Civil Rights Acts. Civ. 87–4009, Sioux Enterprises, Ehrman/Sveegen, trustees/plaintiffs, was also dismissed and Fed.R.Civ.P. 11 sanctions imposed. This case was appealed to the United States Court of Appeals for the Eighth Circuit, and Judge Jones' ruling was upheld.

Opdahl sought to set aside the judgment under the provisions of SDCL 15–6–60(b)(4) and (6)[1], which provide, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> (4) The judgment is void;
>
> . . . .
>
> (6) Any other reason justifying relief from the operation of the judgment.

Our standard of review for a Rule 60(b) motion was set out in *Haggar v. Olfert*, 387 N.W.2d 45, 51 (S.D.1986).

> A motion to vacate a judgment under SDCL 15–6–60(b) is within the trial court's sound discretion. *Rogers v. Rogers*, 351 N.W.2d 129 (S.D.1984). This court will not overturn the trial court's decision unless there has been an abuse of discretion. *Rogers, supra.* Normally, the statute provides for extraordinary relief which may be granted only upon a showing of exceptional circumstances.

In *Matter of T.M.B.*, 416 N.W.2d 260, 263 (S.D.1987), we established criteria that this court should consider in deciding whether to grant relief.

> Whether the movant had a fair opportunity to present his claim or defense; whether there are any intervening equities which make it inequitable to grant relief; and any other factor that is relevant to the justice of the judgment under attack, bearing always in mind that the principle of finality of judgments serves a most useful purpose for society, the courts, and the litigants—in a word, for all concerned.

While Opdahl intermingles his reasons for relief, we will examine each ground separately. The gravamen of his Rule 60(b)(6) argument is Judge Connelly's failure to recuse himself. Opdahl relies on an alleged violation of the South Dakota Code of Judicial Conduct, Canon 3 C(1) as his grounds for holding the judgment to be void. That Canon provides that:

> A Judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned including but not limited to instances where: (a) he has a personal bias or prejudice concerning a party, or, personal knowledge of disputed evidentiary facts concerning the proceeding[.]

Canon 3 C(1) is a broad standard by which a judge should sua sponte determine the matter of self-recusal. It stands as a guiding precept upon which every judge, by an objective in-depth search of his or her own conscience, must decide whether a fair trial dictates he or she should make way for another judge to preside in the case. Recusal may be self-initiated or triggered by the filing of a motion for change of judge predicated upon prejudice. It is for the judge under Canon 3 to initially determine whether a fair trial dictates recusal. Canon 3 provides an objective standard

---

1. At the trial level, Opdahl's motion also included (2), newly discovered evidence, but the trial court determined that Opdahl had not preserved that portion of their motion under *Haggar v. Olfert*, 387 N.W.2d 45 (S.D.1986), and Opdahl does not contest that ruling on appeal.

upon which to also determine whether a judge in a given instance should disqualify himself or herself. *State v. Smith*, 242 N.W.2d 320 (Iowa 1976). The right to a change of judge is not one of absolute right. The judge is entitled to consult his or her own mind and he or she, perhaps better than anyone else, knows whether or not he or she can give a defendant a fair and impartial trial in every way. *Smith, supra.*

■ Opdahl's brief baldly asserts that "Richard Helsper was acting as Plaintiff's attorney in this action over which Judge Connelly presided at the exact same time in which he served in an attorney-client relationship [2] with Judge Connelly." (Footnote added.) Then, tempering the language a bit, it is acknowledged that such a relationship is denied, but Opdahl points to the letters between Helsper and Judge Connelly as indicia of circumstances that could have affected Judge Connelly's impartiality.

Contrary to the false assertion made by Opdahl, none of the letters identify Helsper as Judge Connelly's attorney. The February 9 letter could not be clearer: "I can only assume that the Attorney General will be representing you in this particular matter, and you should forward my Motion to Dismiss to the Assistant Attorney General who has been assigned to represent you." In a February 27, 1987, letter to Judge Connelly, occasioned by Opdahl's pro se attempt to appeal directly from two intermediate state court orders, Helsper informs the court that he is still readying himself for trial in the state action on the previously ordered trial date. In a postscript, he notes the hearing date on the motions for dismissal in federal court and again points out that "I do not represent the Court" in the federal civil suit. Further, in a letter dated June 9, 1987, to the

senior deputy clerk of the Eighth Circuit, Helsper unequivocally states that he represents all the defendants with the *exception of Judge Connelly.* Opdahl finally argues that, at the very least, Helsper should have sent a copy of the letters to opposing counsel. That might have been the better practice for Helsper but we must consider that at that time Opdahl was acting pro se or in conjunction with Sveegen, who was not an attorney, and the two were engaged in such disruptive tactics that the trial court saw fit to impose sanctions which we affirmed in *Tri–State I.* In any event, Helsper's lack of courtesy, even if it can be considered an attempt to ex-parte the trial judge, does not evidence any prejudice on the part of Judge Connelly. Opdahl's argument that Helsper's appearance at the motions hearing and his statement on behalf of Kornmann that Judge Connelly joined in the motions is equally unimpressive. Opdahl was present at this motion hearing and was aware that Helsper was noting Judge Connelly's joinder in the motion on behalf of Kornmann.

In its findings of fact after the motion hearing, the trial court completely discounted the claims of prejudice based on the correspondence and the appearance at the federal motion hearing. In addition, the trial court found that Judge Connelly never had any contact with Helsper asking him to represent him. No money was forwarded to Helsper by the State or by Judge Connelly for services rendered. Since the State was paying for his attorney and his malpractice insurance would cover any liability, Judge Connelly was relatively unconcerned about the federal litigation. We find no basis for Judge Connelly to have recused himself. Therefore, the trial court did not abuse its discretion in denying Rule 60(b) relief. *Haggar, supra.*

2. An attorney-client relationship is one of agency. *Dillon v. City of Davenport*, 366 N.W.2d 918 (Iowa 1985); *Security Bank v. Klicker*, 142 Wis.2d 289, 418 N.W.2d 27 (1987). "Agency 'is a legal concept which depends upon the existence of required factual elements: The manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking, and the understanding that the principal is to be in

control of the undertaking.'" *Kasselder v. Kapperman*, 316 N.W.2d 628, 630 (S.D.1982). The rules governing contract formation determine whether an attorney-client relationship has been created. The contract may be express, yet formality is not essential. Since representation is often informal, the relationship may be implied from the words and actions of the parties. *Security Bank, supra.*

■ Opdahl next claims he is entitled to relief under 60(b)(4), void judgment. Specifically, he alleges that because of Judge Connelly's lack of impartiality he was denied due process; therefore, the court lacked jurisdiction and the judgment is void. In support of this argument, Opdahl cites us to *Zeig v. S.D. Dept. of Labor*, 337 N.W.2d 435 (S.D.1983). We find that case wholly distinguishable from the facts at hand. *Zeig* involved an administrative hearing referee who acted as both prosecutor and judge, presenting evidence on behalf of the State and overruling objections to evidence by counsel for the claimant. First, there is no allegation that Judge Connelly ever departed from his impartial role at trial. Most importantly, being on notice of Helsper's motion in federal court, Opdahl and his counsel chose to proceed in a bench trial in front of Judge Connelly. By failing to file the affidavit for change of judge as required in SDCL 15–12–26, Opdahl waived the issue by submitting to jurisdiction. SDCL 15–12–24.

■ Furthermore, because, as we have stated a Rule 60(b) motion is equitable in nature, seeking extraordinary relief, we must determine where the equities lie. See *T.M.B.*, supra. "It is a fundamental rule of law that one who seeks to invoke a court's equitable jurisdiction must do so with clean hands." *Kane v. Schnitzler*, 376 N.W.2d 337, 347 (S.D.1985). If a party does not come into equity with clean hands, " '... he is not entitled to any relief herein, but should be left in the position in which the court finds him.' " *Reese v. Huron Grain & Coal Co.*, 67 S.D. 9, 19, 287 N.W. 640, 644 (1939) (citation omitted). A critical factor in this situation is how the issue of recusal arose. If the alleged bias or prejudice of the judge is artifically created by the party, we will view any Rule 60(b) motion with extreme skepticism. *See* C. Wolfram, Modern Legal Ethics § 17.5.5 (1986) (party who complains that judge is biased or prejudiced is in a weak position to argue for recusal if party caused judge's presumed animus).

Clearly, Opdahl created the potential recusal issue. Both federal suits were filed solely to harass Judge Connelly and the plaintiffs, as well as delay litigation. Neither of these suits could withstand a motion to dismiss. The suit filed by Lorentz Opdahl was dismissed sua sponte by Judge Jones. The other suit was so frivolous that Rule 11 sanctions were imposed. The United States Court of Appeals for the Eighth Circuit upheld the trial court's decision in the one case that was appealed.

Faced with a similar attempt by a defendant to manipulate the legal system, the Supreme Court of Indiana in *Matter of Appointment of a Special Judge*, 500 N.E.2d 751 (Ind.1986), refused to allow the justice system to be stymied in this manner. In *Special Judge*, a civil defendant tried to take advantage of an Indiana statute that required recusal of a judge if he were named a party to the litigation. The defendant filed a sham claim naming the sitting judge as a third-party defendant to their lawsuit. The court refused to order recusal. Echoing many of our concerns, the court stated:

> Their goal of insulating themselves from judicial authority is being accomplished through the artifice of filing a claim against the sitting judge[.] If this can be successfully achieved by the filing of specious claims, it can be repeated when any successor judge assumes jurisdiction in their case.

*Id.* at 752.

Similarly, Opdahl's specious suit against Judge Connelly was an attempt to improperly impede the state court litigation. If Judge Connelly had recused himself, it would have encouraged Opdahl to continue with these improper stalling actions. As a threshold matter, Opdahl's filing of a frivolous lawsuit against the sitting judge in attempts to claim bias is a factor which makes it inequitable to grant Rule 60(b) relief. *T.M.B.*, *supra*. We could have disposed of this issue on this basis alone. However, due to the serious but unfounded allegations of unethical conduct made against the trial judge, we deemed it necessary to review each of the arguments as set out in Opdahl's brief. In this regard, we recognize the duty of attorneys to rep-

resent their clients zealously to the extent of their ability under Canon 7 of the Code of Professional Responsibility. But that duty is balanced by the countervailing duty under Disciplinary Rule 7–102(A)(1) that "[i]n his representation of a client, a lawyer shall not: file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another." Opdahl's brief on this issue came close to mirroring Opdahl's pro se activities.

We find that the trial court did not abuse its discretion in failing to grant Opdahl's Rule 60(b) motion on any of the alleged grounds. *Haggar, supra; T.M.B., supra.*

We then consider the second issue regarding the amended judgment for damages. Our decision in *Tri–State I* determined that, although Tri–State had been forced from the premises leased from Opdahl, an award of damages calculated at $200 per month without a supporting finding of detriment suffered in that amount was not a proper measure of damages. We noted that the record indicated that Tri–State may have suffered a detriment and remanded with direction that "the trial court should reconsider the damages *from the evidence in the record* and determine whether Tri–State suffered any harm proximately resulting from the breach of the lease." 431 N.W.2d at 315. In the interim, Judge Connelly had retired and the remand was referred to his successor Judge Bogue.

The preface to the findings of fact and conclusions of law entered by the trial court indicate that the trial court reviewed the evidence submitted at the original trial and some correspondence from the parties, which we assume to have been letter briefs as we find nothing in the record by way of exhibits.

Succinctly stated, the trial court found:

1. That Tri–State submitted evidence that it invested $30,000 in an incinerator in 1981.

2. That Tri–State contemplated its use until the end of the term of the lease.

3. The wrongful removal caused Tri–State to lose the use of the incinerator for 7¼th of the contemplated 9¾ths years use.

4. That Tri–State is entitled to $22,307.69 for the remaining value amortized for the remaining 7¼th years.

By conclusion of law and amended judgement, the trial court granted further judgment against all defendants in the sum of $22,307.69.

In argument, Opdahl restates his second issue thusly: "The trial court erred in awarding damages for breach of lease when the lessee failed to prove any proximate harm resulting from the breach."

Based on his proposed findings of fact and conclusions of law, Opdahl's attack on the amended judgment appears to be two pronged. His first and primary argument is that the incinerator, for which the damage was allowed, was inoperable because it could not meet air emission standards and was, therefore, of no value. Second, he argues that there is no evidence showing a proximate connection between the rebuilding of the incinerator in Sioux Falls and the termination of the lease.

The trial court's findings on damages will not be disturbed on appeal unless they are clearly erroneous. *Wiggins v. Shewmake*, 374 N.W.2d 111, 114 (S.D.1985). In applying this standard, we will overturn the findings of the trial court only when, after review of all the evidence, we are left with a definite and firm conviction that a mistake has been made. *Mobridge Community Ind. v. Toure*, 273 N.W.2d 128 (S.D.1978).

Opdahl bases his argument on SDCL 21–2–1. It provides in pertinent part: "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin." Opdahl uses this statute to claim that his actions in excluding Tri–State from the Apaloosa property were not the origin of Tri–State's damages. Instead, he claims that the incinerator was not functional because it could not meet clean air standards.

First, in *Tri–State I*, 431 N.W.2d at 315, we found that, because of interference in their use of the property by Opdahl culminating in mid–1983, Tri–State may have abandoned property on the Apaloosa farm. The record disclosed that Tri–State invested some $40,000 in materials in constructing the incinerator it placed on the Apaloosa property in early 1981. From the record, the trial court selected the sum of $30,000 as the cost. Opdahl does not seem to take exception to determination of cost, but rather to the application of that cost. Nor does Tri–State contest the cost figure by notice of review. Relying on an April 13, 1984, letter[3] from Tri–State's President, Robert Hoff, to the Department of Water and Natural Resources (Department), Opdahl claims that Tri–State could not use this incinerator. The letter, however, indicates that one of the options that Tri–State was considering was adding equipment to make the structure acceptable to the Department. The trial court apparently believed that Tri–State would have taken this course of action but for Opdahl's wrongful interference with Tri–State's use of the property. Opdahl would have us view the incinerator absent his misconduct. We do not choose to do so. The incinerator was a part of Tri–State's film processing carried on at the leased premises, Apaloosa farm. Opdahl effectively forced Tri–State from the leased premises, thus precluding it from the use of the incinerator and from adapting the same so that it would pass air quality standards. Opdahl's breach was clearly the "origin" of Tri–State's damages. *Beefy Trail Inc. v. Beefy King International, Inc.*, 267 So.2d 853 (Fla.Cir.Ct.1972) (damages for expenditures made in preparation or part performance of contract); *Frey v. Nakles*, 380 Pa. 616, 112 A.2d 329 (1955) (lessee entitled to expenses incurred in reliance on contract to lease hotel); *see* 49 Am.Jur.2d *Landlord and Tenant* § 22 (1970) (lessee may recover damages that were in reasonable contemplation of parties).

Second, Opdahl argues that Tri–State's damages are not "clearly ascertainable." Under any damage model, "there need only be a reasonable basis for measuring the loss and it is only necessary that damages can be measured with reasonable certainty." *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114, 118 (S.D.1977). *See also Lorenz Supply Co. v. American Standard Inc.*, 100 Mich.App. 600, 300 N.W.2d 335 (1981) *aff'd.* 419 Mich. 610, 358 N.W.2d 845 (1984) (damages in contract need not be determined to a mathematical certainty); 22 Am.Jur.2d *Damages* § 488 (1988). Where doubt exists as to certainty of damages, those doubts should be resolved against the wrongdoer. *Lorenz, supra; Jacqueline's Washington, Inc. v. Mercantile St. Co.*, 80 Wash.2d 784, 498 P.2d 870 (1972). Here, Opdahl has no right to complain where a more accurate assessment of damages would surely increase the amount of damages. *Swenson v. Chevron Chemical Co.*, 89 S.D. 497, 234 N.W.2d 38 (1975). The trial court found that Tri–State lost the use of the incinerator for a period of 7¼th years out of a contemplated total of 9¾ths years. This period of damages is a reasonable basis for measuring Tri–State's loss. *Schmidt, supra; Lorenz, supra; Jacqueline's, supra.*

The amortization model of damages used by the trial court has been approved by a sister court. In *Provenzano v. Populis*, 428 So.2d 556 (La.App.1983), a lessee made improvements to a lease property, converting it from an auto dealer showroom to a lounge, until the lessor forced him out of the premises. The lessee had occupied the

---

**3.** The letter has a questionable status on this record. It is noted that it is dated nearly a year after the breach of the lease. It was apparently marked as an exhibit and used in cross-examination at the trial, but never offered and received in evidence. Opdahl sought to include it in the record by proposing a finding of fact that the letter is received in evidence. Tri–State objected but the trial court, by letter, advised counsel that the letter was in evidence and he had considered it but it did not change his opinion as previously expressed. We are unable to find the letter in the record. Our only knowledge of it is derived from the purported copy included in Opdahl's appellant's brief. In view of the fact that the trial court, on remand, said that he had considered it, we shall also.

premises for ten and one-half months, with twenty-five months of a thirty-six-month lease remaining. The court amortized the value of the improvements over the remaining twenty-five months of the lease. *Id.* at 560. We do not find that this method of computing damages was clearly erroneous.

■ Finally, Opdahl's unsupported argument that the court should have used fair market value as the basis of damages is wrong. *Clapp v. Gilt Edge Consol. Mines Co.*, 33 S.D. 123, 144 N.W. 721 (1913) (fair market value is standard of damages for conversion, not breach of contract). We decline to consider Opdahl's unsupported argument that Tri–State did not prove it mitigated damages. It was Opdahl's, not Tri–State's, obligation to raise and prove this issue as a defense. Counsel failed to raise this defense and, therefore, waived it. *Renner Elevator Co. v. Schuer*, 267 N.W.2d 204, 207 (S.D.1978); *Kowing v. Williams*, 75 S.D. 454, 67 N.W.2d 780, 783 (1954).

We affirm the amended judgment on remand as well as the trial court's order denying the motion to vacate the original judgment.

All the Justices concur.