## In Re ROMERO
LUTHERAN WELFARE SOC. OF SOUTH DAKOTA et al.,
Appellants, v. ROMERO, Respondent

(46 N. W.2d 108)

(File No. 9209. Opinion filed February 6, 1951)

**Stordahl, May & Boe,** Sioux Falls, for Appellants.

**Tom Kirby, Blaine Simons,** and **Gene McDonnel** all of Sioux Falls, for Respondent.

SMITH, J.   Predicated upon a proper petition and the voluntary consent of the mother of a child born out of wedlock, an order was made in a proceeding instituted in the county court of Minnehaha county under SDC 43.03 declaring the child to be dependent, taking him from the care, custody, and control of his mother, surrendering him to the Lutheran Welfare Society of South Dakota, and appointing its superintendent as his guardian with power to consent to his adoption.   Shortly thereafter, in response to a petition filed by the mother, an ex parte order was entered in the county court vacating its former order and restoring the child to its mother.   Thereupon the Lutheran Welfare Society sought to have the ex parte order of restoration vacated.   The issues were heard upon order to show cause directed to the mother.   The mother prevailed in the county court, and from the resulting order, the Society appealed to the circuit court.   After a trial de novo the circuit court entered judgment vacating the order of the county court first described supra, and restoring custody and control of the child to its mother.

The Society has appealed.   Under appropriate assignments of error it contends that the legislature intended a voluntary surrender of a child for adoption pursuant to the provisions of SDC 43.03 to be final and irrevocable, and hence that the trial court exceeded its powers in entering its judgment restoring the child to its mother.

SDC 43.03 clothes the county court with original jurisdiction to protect and control dependent, neglected and delinquent children.   An order such as was originally entered herein by the county court of Minnehaha county is authorized by the act after hearing on a petition setting forth that a child within the county is dependent, as that term is defined therein, and bearing the endorsed consent of the parent or parents.   SDC 43.0305, 43.0307, 43.0310 and 43.0323. The provisions of the act upon which the Society rests its con-

tention that the surrender of the child for adoption is irrevocable and final read as follows:

"* * * The guardianship under this chapter shall continue until the court shall by further order otherwise direct, but not after such child shall have reached the age of twenty-one years. Any such child or any person interested in any such child may from time to time, upon a proper showing, apply to the court for the appointment of a new guardian or the restoration of such child to the custody of its parents or for the discharge of the guardian so appointed." SDC 43.0315.

"Whenever it shall appear to the court, before or after the appointment of a guardian under this chapter, that the home of the child or of its parents, former guardian, or custodian is a suitable place for such child, and that such child should be permitted to remain or ordered to be returned to such home consistent with the public good and the good of the child, the court may enter an order to that effect, returning such child to his home under probation, parole, or otherwise; it being the intention of this chapter that no child shall be taken away or kept out of its home or away from its parents and guardian any longer than is reasonably necessary to preserve the welfare of the child and the interests of this state. No such order shall be made without first giving ten days notice to the guardian, institution, or association to whose care such child shall have been committed, unless such guardian, institution, or association consent to such order; **provided that this section shall not apply to any child surrendered to any institution for the purpose of adoption.**" (Emphasis supplied.) SDC 43.0316.

"The court may from time to time cite into court the guardian, institution, or association to whose care any dependent, neglected, or delinquent child has been awarded, and require him or it to make a full, true, and perfect report as to his or its doings on behalf of such child; * * * and upon the hearing on such report * * * the court may, if it deem proper, remove such guardian and appoint another in his stead, or take such child away from the institution or association and place it in another, or restore such child

to the custody of its parents or former guardian or custodian." SDC 43.0317.

` The contention of the Society rests upon the clause we have emphasized in SDC 43.0316, supra, viz., "provided that this section shall not apply to any child surrendered to any institution for the purpose of adoption."

It earnestly argues that SDC 43.0316 but provides the procedure to be followed in a proceeding instituted under SDC 43.0315, and that these sections are but dependent parts of a whole. It concludes therefore that the quoted clause qualifies the whole act and reveals a legislative intention to render the surrender of a child for adoption final and irrevocable. It leans upon the elaborate holding In re Adoption of a Minor, 79 U.S.App.D.C. 191, 144 F.2d 644, 156 A.L.R. 1001, in advancing the argument that it is reasonable to believe the legislature adopted the suggested policy as a means of promoting the adoption of children. We are not persuaded. A powerful answer to such an argument appears in the testimony the courts below evidently believed. We pause to indicate the nature of that testimony.

The mother had been in the merciful care of the Society for a period of months before the child was born. That her decision to surrender the child to the Society for placement and adoption was uninfluenced and voluntary is undisputed. Both the mother and the Society acted in good faith. However, when the mother made her decision she belived the child would be required to live the life of an illegitimate if it remained with her, and that she would be required to depend upon her own resources in providing it with care and maintenance. No doubt she acted on the conviction that she should surrender her baby to promote its welfare. Shortly after she took that step, the father of the child promised to marry her as soon as he returned from military service and his father and mother, people of some means, offered to take her and the child into their home and care for them until their son returned to carry out his promise. The testimony of the mother and of the father's father was before the trial court. We think it should require very explicit provisions of statute to induce a conclusion that a

legislature intended to require a court to disregard such a factual situation in dealing with the welfare of a child and the rights of a parent.

We turn to the words employed by the legislature in expressing its meaning. In SDC 43.0315 and 43.0317 it employs the terms "restoration" and "restore", while in SDC 43.0316 it uses the terms "remain" and "return". Plainly, we think, in the two sections first cited the legislature was intending to clothe the court with power to terminate its custody and control of the child and to restore that custody and control to the parent, while in SDC 43.0316 it sought to authorize the court to allow a child to "remain" in or "return" to its home during a continuance of the custody and control of the court. And see SDC 43.0310. That it would not intend that a child available for adoption should either remain or be so returned to the home of its parents is understandable for obvious reasons. It is noteworthy that it provided, in a separate section, for the power to control a child while allowing it to return to or remain with its parents, and then said "provided that this **section** shall not apply to any child surrendered to any institution for the purpose of adoption." The words "this section shall not apply" would have no office to perform if the clause as a whole were intended to be a limitation upon all of the powers confided in the court by the act. The language we have considered and the nature of the subject matter convince us that the legislature intended to invest the court with the power to restore a child, surrendered for adoption, to its parents.

Having reached the conclusion that a power of restoration has been committed to the court we are not troubled by the fact that this mother signed a consent to the adoption of her child. In the circumstances at bar, we deem it enough that she changed her mind. We are unfamiliar with any principle of jurisprudence which would render such a naked consent binding on a parent. Cf. In re White's Adoption, 300 Mich. 378, 1 N.W.2d 579, 138 A.L.R. 1034. Whether in other circumstances she should be held to be estopped to withdraw her consent, we need not determine. It is not

contended here that the evidence is sufficient to raise such an estoppel.

Finding no error in the record, the judgment of the trial court is affirmed.

All the Judges concur.