368 N.W.2d 602 (1985)
In the Matter of the Termination of Parental Rights Over J.M.J.
No. 14672.
Supreme Court of South Dakota.
Considered on Briefs February 6, 1985.
Decided May 22, 1985.
Rehearing Granted June 27, 1985.
*603 Forrest C. Allred, Aberdeen, for appellant D.J., Mother of J.M.J.
Michael J. Williams, Asst. Atty. Gen., Pierre, for appellee South Dakota Department of Social Services; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.
HENDERSON, Justice.

ACTION
This appeal pertains to the permanent termination of the parental rights of a mother to her child and arises from an order denying D.J.'s (mother's) petition to vacate the order which terminated her parental *604 rights over J.M.J. (child). We reverse.

FACTS
In January 1982, the Department of Social Services removed the child from the mother's custody and placed her in licensed foster care. In August 1982, the Department then placed the child in the custody and care of the Filipeks, in Phoenix, Arizona. The Filipeks are mother's sister and brother-in-law.
In November 1982, the Department commenced a dependency and neglect action against the mother and an initial hearing was conducted. The hearing was continued on December 13, 1982, and the dependency and neglect action was dismissed because, at this hearing, mother filed a petition to voluntarily terminate her parental rights. Mother waived her right to five day's notice before a hearing on the voluntary termination petition and a hearing on the petition was conducted at that time.
At this hearing, the mother testified that she freely and voluntarily filed the petition for voluntary termination of her parental rights; that she understood the petition; that she was asking the court to end her parental rights to her child forever; that there was no guarantee that her child would be returned to her if she appealed; that she had no reservations about what she was doing; and that she understood the order was irrevocable and she could not change her mind. Importantly, however, mother also testified that she understood and was assured by the Department of Social Services that her child would be placed with her sister and brother-in-law in Arizona for adoption and that this was one of the conditions why she was consenting to termination.
The deputy state's attorney stated that he understood placement to be with the sister but the court stated that it did not believe it had the authority to order it and after placement with Social Services, the court's jurisdiction would end. A caseworker for the Department of Social Services also testified that it was the Department's intention and plan to place the child with the Filipeks in Arizona and that she had no knowledge and no anticipation of any problems. Below is the pertinent testimony of the mother, comments of the deputy state's attorney, comments of the trial court, and a final statement made under oath by the mother:
Q. [by Mother's trial counsel] And you understand that the child is going to be placed with, and is with your sister in Arizona, and they will adopt the child?
A. [by Mother] Right.
Q. And Social Services has assured you that the child will be adopted by that family, and that is one of the conditions why you are consenting to termination?

A. Yes.

* * * * * *
Q. [by Mother's trial counsel] Do you understand that when this order is entered, it is irrevocable; that if you want to change your mind, it's all over?
A. [by Mother] I know. But what would happen if Social Services says she is definitely going to go to my sister, and they turn around and[1]
Q. It's my understanding that that will be in the order.
* * * * * *
[D.J.], do you understand that the child will be placed with your sister for adoption, and that that is the only condition you are placing on this relinquishment?

A. Yes.

[by the State] That's the State's understanding also.[2]
THE COURT: It's the Court's understandingI don't believe I have the authority to order that. I would place custody *605 with Social Services and, after that, my jurisdiction would end
[by Mother's trial counsel] I will put Social Services on the stand. Do you have any other questions, [D.J.]?
A. [by Mother] I want to make sure she is placed with the family.[3]
(Emphasis supplied mine.)
The court thereafter ordered the mother's parental rights to be terminated and by Findings of Fact, Conclusions of Law, and an Order dated December 29, 1982, prepared by the mother's counsel, the court specifically held, inter alia, that the mother was fully aware of the purpose of the proceedings and the consequences of her action and ordered the agency to place the child with the Filipeks if at all possible.
The child remained with the Filipeks in Arizona until March 1984. The child had never been adopted by the Filipeks and because they were experiencing marital and parenting problems, they requested that the Department of Social Services remove the child from their home. The Department transported the child back to South Dakota and on March 30, 1984, the mother filed a petition requesting the court to vacate the order terminating her parental rights.
On June 13, 1984, a hearing was held on the petition to vacate and, by an order dated July 24, 1984, the trial court denied the mother's petition and specifically found that it was in the best interests of the child that the previous order terminating the mother's parental rights remain in full force and effect. It is from this order that the mother now appeals. We hold that her appeal is well taken because she "terminated" her rights upon a condition most material and important to her, and there cannot be a "conditional" relinquishment.
DECISION
I.
DID THE TRIAL COURT'S TERMINATION OF MOTHER'S PARENTAL RIGHTS COMPLY WITH THE STATUTORY REQUIREMENTS OF SDCL CH. 25-5A? WE HOLD THAT IT DID NOT.
The voluntary termination of parental rights is controlled by the provisions of SDCL ch. 25-5A. As was held in In re D.L.F., 85 S.D. 44, 176 N.W.2d 486 (1970), which addressed the statutory requirements of the predecessor of SDCL ch. 26-8, voluntary termination hearings must strictly comply with the statutory provisions mandated by SDCL ch. 25-5A. Among the requirements dictated by that chapter is that, at the hearing, the court must find the termination to be in the best interests of the child and that the petitioner is "fully aware of the purpose of the proceedings and the consequences of their act." SDCL 25-5A-16 and SDCL 25-5A-18.
Mother here contends that the Order Terminating and Transferring Parental Rights, dated December 29, 1982, is not supported by the proceedings which occurred on December 13, 1982. Mother asserts that her consent to voluntary termination of her parental rights was conditioned on the child being placed in the custody of or being adopted by her sister in Arizona. Mother claims that because the trial court failed to inform her that it did not have the power or jurisdiction to assure or require that the child be so placed, the trial court failed to determine that she was fully aware of the consequences of her act as required by SDCL 25-5A-16 and SDCL 25-5A-18.
The trial court specifically found that appellant was aware of the consequences of her decision; that she understood the termination to be irreconcilable, final, and conclusive; and that the Department of Social Services would recommend placement with mother's sister. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." SDCL 15-6-52(a).

*606 In applying the clearly erroneous standard we must bear in mind that our function is not to decide factual issues de novo. The question for the appellate court is not whether it would have made the same findings the trial court did, but whether on the entire evidence it is left with a definite and firm conviction that a mistake has been committed.
In re Estate of Hobelsberger, 85 S.D. 282, 289, 181 N.W.2d 455, 459 (1970). This Court has recognized that parents have a fundamental right to their children. In re K.D.E., 87 S.D. 501, 210 N.W.2d 907 (1973). "Deciding a case such as this is not a pleasant duty." In re Magee, 74 S.D. 286, 291, 52 N.W.2d 99,101 (1952). Upon a review of the proceedings, however, we are left with a definite and firm conviction that a mistake has been made.
Proceedings under SDCL ch. 25-5A are for the voluntary "termination" of parental relations and under SDCL 25-5A-16 and SDCL 25-5A-18, the court must determine that the parents are fully aware of the purpose of the proceedings and the consequences of their act. To terminate means "to bring to an ending or cessation in time, sequence, or continuity" and "to form the ending or conclusion of." Webster's Third New International Dictionary 2359 (rev. 4th ed. 1976). Parental rights are thus brought to a complete and unequivocal end or conclusion under this chapter and the trial court is required to determine that the parents are fully aware of this. In the present case, however, the trial court's conclusion that appellant was fully aware of the purpose of the proceedings and the consequences of her act is not supported by the record.
At the voluntary termination hearing, the mother "conditioned" her consent to relinquishment of her child. A condition is "a premise upon which the fulfillment of an agreement depends." Webster's New Collegiate Dictionary 233 (1980). It is also described as a "covenant" and "a provision making the effect of a legal instrument contingent upon an uncertain event." Id. The condition imposed by the mother was the antithesis of a consent to an absolute termination of the custody of her child. Such a partial or conditional termination of parental rights is not within the purview of SDCL ch. 25-5A.[4] Upon hearing appellant's conditional termination testimony, the trial court was required by statute to inform appellant, and determine that she was fully aware, that she was completely terminating her parental rights and that a partial or conditional termination was unacceptable. Although the trial court expressed doubt about its authority to order the fulfillment of the mother's condition, this was not a determination that appellant was fully aware that she was consenting to the complete and unconditional termination of her parental rights. The trial court's determination to the contrary is therefore in error.

II.
DID THE TRIAL COURT PROPERLY DENY MOTHER'S PETITION TO VACATE ITS ORDER TERMINATING HER PARENTAL RIGHTS? WE HOLD THAT, UNDER THESE FACTS, THE TERMINATION ORDER SHOULD HAVE BEEN SET ASIDE.
SDCL 25-5A-19 provides:
Notwithstanding the provisions of § 26-8-54, any order entered under this chapter shall be conclusive and binding on all parties; except that an appeal may be taken to the Supreme Court from a judgment, decree, or order of the circuit court under the provisions of this chapter, within thirty days from the date of filing the judgment, decree or order appealed from and in the manner provided in chapter 15-26. Initials shall appear on the record on appeal in place of the name of the child.
*607 The "conclusive and binding" language evinces a legislative intent that a parent's voluntary termination of his or her parental rights should constitute a final adjudication of those rights. However, SDCL 15-6-60(b) permits a court, among other things, to relieve a party from a final judgment within a reasonable time for any reason justifying such relief. In Purinton v. Purinton, 41 S.D. 125, 131, 169 N.W. 236, 238 (1918), this Court also held:
The power of a court to open up a judgment for a sufficient reason does not rest upon statute, though statutes may limit the power; but such power is one inherent in a court and, except as limited by statute, is within the sole control of the courts.
In Matter of D.D.D., 294 N.W.2d 423 (S.D. 1980), this Court directed the trial court to reconsider the voluntariness of a parent's consent and thereby, sub silentio, held that the "conclusive and binding" language of SDCL 25-5A-19 does not impose a statutory limitation on a court's inherent power to reexamine a judgment.
Mother argues that the trial court erred by refusing to vacate its prior termination order because her consent thereto was conditional. Mother has requested that the prior order be vacated and her parental rights be restored. We agree. For support, mother points to D.D.D., wherein we directed the court below to reconsider the voluntariness of the consent, and In re Romero, 73 S.D. 564, 568, 46 N.W.2d 108, 110 (1951), wherein we stated, "we are not troubled by the fact that this mother signed a consent to the adoption of her child. In the circumstances at bar, we deem it enough that she changed her mind."
This case is unlike the situation addressed in D.D.D., in that the trial court has not issued conflicting orders concerning the parent's voluntary consent and is unlike Romero in that instead of changing her mind in a matter of days, appellant here has waited for some sixteen months. Notwithstanding, it would be unconscionable and contrary to the spirit of the entire chapter on voluntary relinquishments to uphold this particular relinquishment because, as decided above, appellant did not consent to a full termination of her parental rights.
At the hearing to vacate the order terminating appellant's parental rights, the trial court examined the petitions and heard counsels' arguments and determined that it was in the best interests of the child for the previous order to remain in full force and effect. Although the trial court was not required to consider the best interests of the child when considering the petition to vacate, Matter of Adoption of Everett, 286 N.W.2d 810 (S.D.1979), it was a permissible criteria for the court's consideration. However, in light of the determination in the first issue, we hold the trial court's denial of the petition to vacate was in error.
We reverse.
WOLLMAN, J., concurs specially.
MORGAN, J., concurs in result.
FOSHEIM, C.J., and WUEST, Circuit Judge, Acting as Supreme Court Justice, dissent.
WOLLMAN, Justice (concurring specially).
I agree with the majority opinion that in the circumstances of this case the trial court should have vacated the order terminating the mother's parental rights. I write specially only to express my concern that the majority opinion may be read by some as extending beyond the narrow confines of the facts of the case.
Had the mother's sole condition to her willingness to terminate her parental rights been the desire that the child be placed with her sister, then without question she would not now be heard to question the validity of the order of termination, for the record is abundantly clear that the child was in the custody of the Filipeks and that the Department of Social Services was trying to facilitate the adoption by the Filipeks. Although the record, as reflected in *608 the majority opinion, is somewhat ambiguous and contradictory on this point in that the mother gave, in response to leading questions by her counsel, somewhat contradictory answers regarding the conditions she was placing upon her consent to termination, I would give credence to her response that she was conditioning her consent upon the fact that the child would be adopted by her sister. Once that condition was expressed, the trial court should have immediately terminated the proceedings, for I agree with the majority opinion and the Colorado case cited therein that a consent to an action as important as the permanent termination of parental rights may not be conditioned in any manner. Indeed, I would analogize the giving of consent to termination of parental rights to the entry of a guilty plea in a criminal case, in which the expression of even a minor reservation requires the trial court to reject the proffered plea.
I join in the majority opinion only because no adoption or pre-adoption or foster placement by or with third parties had occurred here. The child remained with the Filipeks from August of 1981 until March of 1984, when they requested that the child be removed from their home. Had the child been adopted by third parties or had it been in pre-adoption or foster care placement with third parties for an equivalent length of time, I would hold that the mother would be barred by laches or estoppel from now challenging the validity of her consent. Granted that our decisions have had the effect of making unappealed adoption orders less conclusive than SDCL 25-5A-19 would suggest, see Wagner, "Voluntary Relinquishment of Parental Rights in South DakotaHow Final?," 26 S.D.L.Rev. 39 (1981), we must be careful not to so erode the concept of finality as to render virtually any adoption order interlocutory. The peculiar circumstances of the case before us, however, compromised no rights of the child or of any third parties. Indeed, the mother concedes that the State may proceed with another action to terminate her parental rights if it deems such action necessary. Accordingly, I join in the judgment that the order of termination should have been vacated.
MORGAN, Justice (concurring in result).
I concur in the result. I would permit mother to revoke her consent in this case for two reasons: (1) It is obvious that her consent was part of a family plan to have her child adopted by her sister and brother-in-law, which plan fell through by no fault of the mother; and (2) no other disposition had been made for the child's adoption.
There may be other instances where voluntary termination has been entered and the record reflects some reservation on the part of the parent or parents involved, but the child has been adopted. I would not want to open the flood gates for actions to overthrow those orders. The Colorado case, K.W.E. v. People, 31 Colo.App. 219, 500 P.2d 167 (1972), is distinguishable. In that case, the trial court had dismissed the action. While the appellate court termed the relinquishment as "partial" or "conditional," not authorized by statute, the stated reasons for sustaining the trial court's action appears to be the finding that the mother "was not in any position to make such an important decision [relinquishment] at this time." Id. 500 P.2d at 169.
I rely on In re Romero, 73 S.D. 564, 46 N.W.2d 108 (1951), as cited in In Re D.L.F., 85 S.D. 44, 57, 176 N.W.2d 486, 490 (1970), wherein it is said:
"we are not troubled by the fact that this mother signed a consent to the adoption of her child. In the circumstances at bar, we deem it enough that she changed her mind. We are unfamiliar with any principle of jurisprudence which would render such a naked consent binding on a parent. * * * Whether in other circumstances she should be held to be estopped to withdraw her consent, we need not determine. It is not contended here that the evidence is sufficient to raise such an estoppel."
It is true that the mother's consent was given subsequent to commencement of a dependency and neglect proceedings, as *609 pointed out by the dissent, but I deem this of little consequence for there is a long step between an adjudication of dependency and neglect and the termination of parental rights. While considerably more time elapsed in this case than did in Romero, supra, and D.L.F., supra, this is because the plan for placing the child for adoption with the sister and brother-in-law had gone ahead and it appears the mother moved expeditiously when the plan fell through. Where the child was not again placed for adoption, there would appear to be no grounds for estoppel.
I would rely on SDCL 15-6-60(b) and Purinton v. Purinton, 41 S.D. 125, 169 N.W. 236 (1918), both cited by the majority, for authority for the trial court to vacate the order in spite of the provisions of SDCL 25-5A-19.
FOSHEIM, Chief Justice (dissenting).
The petition of the mother to terminate her parental rights was completely voluntary. She testified that it was freely filed with the understanding that she was asking the court to forever and irrevocably terminate her parental rights. She understood that her child would never be returned to her. The mother had no reservations about what she was doing, but did understand that following her termination, the child would be placed with her sister and brother-in-law in Arizona for adoption. However, it is also true that before the hearing was concluded, the Judge clearly informed the mother that he did not have authority to order where the child would be placed for adoption and that after custody was vested with Social Services, the Court's jurisdiction would end. The Court was quite correct. It is elementary that a South Dakota Court cannot direct and control adoption proceedings in another State. There was no deception or misrepresentation by either the Court, the Department of Social Services or the State's Attorney. On the contrary the record reveals that about everything was done that could be done to make the mother's decision well considered. The Court did place the child in the custody of the Department of Social Services. The Department did transfer the child to Arizona to live with the sister and brother-in-law of the mother as they indicated would be done.
Whether the Filipeks would meet Arizona adoption requirements was an unknown. The Filipeks, on their own, decided against the adoption or even continued custody because they were experiencing marital and parenting problems. That decision was probably made with the knowledge that their personal uncertainties would prevent them from fulfilling the adoption requirements of Arizona. These were possible contingencies which must reasonably have been anticipated at the termination hearingno assurances to the contrary could have been made as a matter of law.
Furthermore, the change of circumstances in Arizona did not alter the merits of the decision of the Court to terminate the parental rights of the mother. We can assume that the termination decision ultimately rested on the neglect of the mother rather than the voluntary or involuntary nature of the petition. Before the mother came forward with a voluntary termination petition, the Department had commenced a dependency and neglect action against her. An initial hearing had been conducted, which was continued until December 13, 1982. That dependency and neglect action was dismissed when the voluntary petition emerged. The primary significance of the voluntary petition therefore was its indication that the mother was not disputing the claims of child neglect, alleged by the Department.
At the hearing to vacate the order terminating appellant's parental rights, the court examined the petitions; heard counsels' arguments; and again determined from the entire record that it was in the best interests of the child that the termination order remain in full force and effect.
It accordingly appears that the decision of the trial court to terminate, rested on facts of neglect independent of the wishes or understanding of the mother. From the *610 record, we cannot conclude this decision was clearly erroneous. SDCL 15-6-52(a).
I am authorized to state that WUEST, Circuit Court Judge Acting as a Supreme Court Justice, joins in this dissent.
NOTES
[1] This statement, under oath, reflects the mother's mental reservations.
[2] State agreed to the mother's conditional relinquishment.
[3] Mother thereby expressed a condition to the relinquishment.
[4] In K.W.E. v. People, 31 Colo.App. 219, 500 P.2d 167 (1972), the Colorado Court of Appeals also ruled that a partial or conditional relinquishment was not authorized by their statutes governing voluntary parental relinquishment of children.