1999 SD 36

**In re the Matter of J.H., an abused or neglected child.**

**Nos. 20622, 20627.**

Supreme Court of South Dakota.

Considered on Briefs March 18, 1999.

Decided March 29, 1999.

Mark W. Barnett, Attorney General, Joan P. Baker, Assistant Attorney General, for appellant

Steven R. Smith, Andera Law Offices, Chamberlain, for J.H., child.

John J. Simpson, Winner, for T.H., mother.

Ron J. Volesky, Huron, for B.W., grandmother.

PER CURIAM.

[¶ 1.] In this case, the trial court ordered termination of Mother's and Father's parental rights and placement of Child pending open adoption with Grandmother in Washington. Under the order, Mother is allowed contact with, but not custody of, Child. The State appeals the order as to the trial court's placement decision. By notice of review, Mother appeals the order as to the trial court's termination decision. Grandmother filed an appellate brief as intervenor. Father does not appeal the termination of his parental rights. We affirm in part and reverse in part and remand.

FACTS

[¶ 2.] On March 28, 1997, Child (d.o.b. August 1, 1993) was taken into temporary physical custody by Department of Social Services (DSS) when his younger half-brother, J.G. (d.o.b. April 1, 1994), died as a result of physical abuse inflicted in their home. Although Mother was initially suspected, it was later determined that J.G. died at the hands of Child's Father, whom Mother was again dating.[1] Within two weeks of this tragic event, the trial court received a letter from Child's maternal Grandmother offering her home in the state of Washington to Child if it was determined he could not return to his Mother. This letter provided the court with information on Grandmother's and step-Grandfather's work, finances, home, school and families in the area, and their relationship with Child. The letter further indicated her willingness to obtain counseling for Child, open their home to a home study, return to South Dakota for court hearings and to allow Child to maintain his relationship with family here, and encourage visitation with his parents as deemed appropriate by the court.

[¶ 3.] Mother was granted immunity for her cooperation with the State in the criminal investigation of J.G.'s death and her agreement to have no contact with Father. In spite of this, she maintained almost daily contact with Father. In July 1997, she married him. On September 8, she obtained a temporary protection order against him for acts of physical violence and threatened violence toward her. In August and September, Child stated on two separate occasions to Mother that J.G. was "in a box" because "dad hit him in the stomach" and that "dad burnt J.G."

[¶ 4.] At a hearing October 14, 1997, Father petitioned to have his parental rights to Child voluntarily terminated. At this time, Mother admitted the allegations of abuse and neglect of Child. Child continued to reside in the foster home in which he was placed in March and Mother was allowed unsupervised visitation. At a hearing November 26, visitation was ordered to be supervised due to an incident of prohibited contact of Child with Father and Mother together.[2] After this order was entered, Mother scheduled only one visit with Child. This visit was to occur January 6, 1998; Mother neither appeared nor called to explain her absence. Child showed no emotion when told by DSS worker that his Mother was not coming.

[¶ 5.] Mother was incarcerated January 9, 1998 and charged in Beadle County with three felony counts involving possession, distribution and maintaining a residence for the use of methamphetamines. On February 18, 1998, she was sentenced in Lyman County to five years in the state penitentiary after pleading guilty to conspiracy and being an accessory to a felony in connection with J.G.'s death.[3] On April 7, 1998, Mother was

---

1. J.G. and Child have different fathers. Mother was married and divorced from J.G.'s father at the time of J.G.'s death. J.G. died from internal injuries caused by severe blows to his abdomen. An autopsy revealed evidence of other, non-life threatening injuries, such as burns on his fingertips and back and discoloration of his genitals.

2. A prior order of the court prohibited contact by Mother with Father or Father's family, and prohibited Child from having such contact.

3. Father pled guilty to first degree manslaughter of J.G. and was sentenced to 38 years in the state penitentiary.

sentenced in Beadle County to consecutive terms of two years and five years on the felony drug charges; these terms to run consecutively to the five-year sentence she received in Lyman County in February.[4]

[¶ 6.] In March 1998, a home study of Grandparent's home in Washington as a possible placement for Child was completed. Letters from family friends and coworkers and supervisors of Grandmother's were sent to the court on Grandparents' behalf. Child had an unsupervised visit with Grandparents at their home which was a positive experience according to DSS and foster parents.

[¶ 7.] In May 1998, the court held its final dispositional hearing and entered its order and findings and conclusions on June 22, 1998. The order terminated both Father's and Mother's parental rights to Child. The order also placed custody of Child with Grandmother in Washington, decreeing that Grandparents be allowed to adopt Child with an open adoption provision for visitation by, but not custody with, Mother.

[¶ 8.] Both the State and Mother appeal the trial court's order. The State appeals the placement provision of the order and raises the following issues:

1. Whether the placement order violates SDCL 26–8A–27, and if so, whether this constitutes prejudicial error.

2. Whether the placement order violates SDCL 26–8A–27 and 25–6–17 regarding open adoptions.

3. Whether the State's Attorney effectively represented DSS as envisioned by SDCL 26–7A–9.

4. If the placement order is violative of statute, how is present placement in Washington affected and what can be done about it.

By notice of review Mother appeals from the termination provision of the order and raises the following issues:

5. Whether Mother was denied constitutional rights of due process and effec-tive assistance of counsel at the November 26, 1997 hearing because her court-appointed attorney was ordered to proceed in her absence despite having been discharged by Mother.

6. Whether the termination order was void for lack of jurisdiction because it was not petitioned by the State's Attorney as required by SDCL 26–8A–24.

7. Whether the court erred because it failed to make the findings required by SDCL 26–8A–26.

Because termination of parental rights must precede any decision regarding placement for the purpose of adoption, *see* SDCL 26–8A–27; *In re B.S.*, 1997 SD 86 ¶ 19, 566 N.W.2d 446, 450, we address Mother's issues first.

## ANALYSIS AND DECISION

[¶ 9.] **1. Whether Mother was denied constitutional rights of due process and effective assistance of counsel at the November 26, 1997 hearing because her court-appointed attorney was ordered to proceed in her absence despite having been discharged by Mother.**

[¶ 10.] Following the suspected incident of prohibited contact between Child and Father and Mother together, Child's attorney filed a motion to modify the existing visitation order that permitted unsupervised and extended weekend visitation. At the November 26, 1997 hearing on this motion, evidence was presented of the suspected prohibited contact when Father and Mother arrived together to pick up Child from the foster home for an extended weekend visitation.

[¶ 11.] Mother had notice of this hearing but elected not to appear or explain her absence. Mother's attorney informed the court on record that he had left telephone

---

4. Although Mother testified at the May 11, 1998 dispositional hearing that her sentences for the felony drug convictions run concurrently, the trial court's findings and conclusions, incorporated by reference into its order, indicate they run consecutively to one another and consecu-tively to the sentence she received from this trial court for conspiracy and being an accessory to a felony. No party filed objections or filed any proposed findings and conclusions on this or any other point of fact.

messages several days earlier trying to reach Mother to discuss the hearing. A person claiming to be Mother's friend returned his calls the morning of the hearing; Mother's attorney informed this person he would not discuss his client's affairs with her friends. When Mother finally contacted her attorney later that same morning, he told her of the importance of the hearing and raised his voice. Angered, Mother told him not to raise his voice with her, that he was fired and that another attorney would represent her at the 1:00 p.m. hearing. He reminded her he was court-appointed and the judge would determine his future representation of her. She again responded she would have another lawyer at the hearing.

[¶ 12.] Neither Mother nor another lawyer appeared at this hearing. The court so noted and told Mother's attorney he was still representing Mother and to proceed though Mother's attorney advised the court that without his client present he was not ready. Attorney for Child presented three witnesses who gave testimony regarding the possible sighting of Father in Mother's car when she came to the foster home to pick up Child for visitation. Mother's attorney cross-examined each of these witnesses.

[¶ 13.] At the close of evidence, Mother's attorney requested a continuance, claiming lack of five days' notice as provided by SDCL 15–6–6(d). The court found that actual notice by facsimile provided Mother with five days' notice, SDCL 15–6–5(f), and that, due to the facts presented at the hearing, there was good cause to waive the normal five-day notice period. The court ordered visitation to be supervised until Mother's attorney could meet with Mother and a full hearing could be scheduled to determine any further disposition. The record indicates no further action in this regard was taken by Mother or her attorney.

[¶ 14.] Although she frames this issue as one concerning her constitutional rights, Mother argues in her brief to this Court that the trial court abused its discretion in denying her attorney's verbal request for continuance. The argument is contrary to the factual record. The transcript indicates the trial court told Mother's attorney to schedule an expedited hearing when he learned the situation from his client. Mother's attorney responded that he would forward the court's order to Mother and she could let him know how she wanted to proceed. As noted above, there is no evidence of any response by Mother or her attorney on this matter although the opportunity was made available to her. Mother has failed to show an abuse of discretion by the trial court or that her constitutional rights were violated at this hearing.

[¶ 15.] Mother does not cite to any authority or part of the record to support her claim on this issue. There has been no showing that the trial court abused its discretion.

[¶ 16.] **2. Whether the termination order was void for lack of jurisdiction because it was not petitioned by the State's Attorney as required by SDCL 26–8A–24.**

[¶ 17.] SDCL 26–8A–24 mandates that the court will conduct periodic review hearings of the status of a child in DSS custody after adjudication of abuse or neglect and prior to termination of parental rights. This statute provides in part that: "If [DSS] at any time finds that further court action is necessary to clarify child's legal status or, for any other reason, to protect the interests of the child, [DSS] may require the state's attorney to petition the court for a review hearing."

[¶ 18.] At the January 23, 1998 hearing, Mother filed a motion to dismiss the proceeding on grounds that form the basis for this issue. This motion was denied. Mother raised the issue again by motion to dismiss at the May 11, 1998 hearing; the motion was denied. Mother argues that because the motion requesting the hearing which ultimately resulted in termination of her parental rights was made by Child's attorney rather than the state's attorney, the motion violates SDCL 26–8A–24 and thus, the court lacked jurisdiction to order termination.

[¶ 19.] SDCL 26–8A–26 provides the trial court may order termination of parental rights at one of the mandated periodic review hearings, provided the statutory grounds for termination exist. The statute further pro-

vides the review hearings will be conducted in the same manner as dispositional hearings. Contrary to Mother's argument, then, petition by the state's attorney is not the only way a disposition of termination may occur. Termination has always been an issue in the abuse and neglect proceedings involving Child. Mother has understood this at least since April 1st and 23rd of 1997 at which time Mother answered the trial court on record that she understood these proceedings could lead to termination of her parental rights and placement of her child for adoption. The fact that Child's attorney filed a motion for an expedited hearing on the issue does not divest the trial court of jurisdiction to order termination. *See In re A.J.H.*, 363 N.W.2d 196 (S.D.1985) (decided under former version of SDCL 26–8A–24).

[¶ 20.] Mother may not prevail under this issue.

[¶ 21.] **3. Whether the court erred because it failed to make the findings required by SDCL 26–8A–26.**

[¶ 22.] SDCL 26–8A–26 provides in relevant part:

> If ... it appears at a dispositional or review hearing that *all reasonable efforts have been made to rehabilitate the family, that the conditions which led to the removal of the child still exist, and there is little likelihood that those conditions will be remedied so the child can be returned to the custody of the child's parents,* the court shall affirmatively find that good cause exists for termination of the parental rights of the child's parents and the court shall enter an order terminating parental rights.

(emphasis added). Mother states the court's findings and conclusions did not include the language emphasized above and thus, the trial court erred in ordering termination of her parental rights.

[¶ 23.] This statute "lists the considerations required before determining that good cause exists for termination." *A.J.H.*, 363 N.W.2d at 198. These considerations are not statutory elements to be found on the record

before termination is ordered. SDCL 26–8A–27 provides the court may enter an order terminating parental rights "if the court finds, by clear and convincing evidence, that the least restrictive alternative available commensurate with the best interests of the child ... so requires." The trial court made this finding on the record.

[¶ 24.] Mother appears to argue that the trial court's decision to terminate was in error because the circumstances which led to the removal of Child from the home no longer exist. The death of Child's younger brother, J.G., due to physical abuse inflicted at home was the initial cause for Child's removal. It was later learned that Father caused J.G.'s death; he subsequently pled guilty to first-degree manslaughter and is serving thirty-eight years in the South Dakota State Penitentiary. However, the death of Child's sibling, and Father's subsequent removal from the home, was not the only circumstance the trial court considered in deciding to terminate Mother's parental rights.

[¶ 25.] The record reflects that a Family Service Agreement (FSA) was completed by DSS and outlined objectives to be completed by Mother. Mother verbally agreed to the FSA but failed to sign the agreement for four months. It was finally signed and returned after her arrest on the felony drug charges. She admitted taking drugs beginning in April 1997 in increasing amounts and "hiding out in motels" in order to cope with the pain of J.G.'s death. Mother failed to complete any of the five objectives on the FSA, which included psychological and substance abuse evaluations and parenting assessments. Mother failed to keep scheduled appointments. As to any completed evaluations, Mother admitted she lied to evaluators in hopes of getting custody of Child returned to her.[5] Immediately following unsupervised visitations with Mother, Child's behavior declined significantly. During one weekend visit, which occurred at a motel with a boyfriend in violation of visitation rules, Mother returned Child a day early to the foster home because he had become "unmanageable." After the court ordered supervised

5. Evaluators, aware of this when they attempted to summarize test results, stated the results were inconclusive because of Mother's desire to appear "especially virtuous."

visitation, Mother scheduled only one visit and then failed to appear or provide reasons for this failure. Mother disobeyed the trial court's order, as well as the immunity agreement with State, regarding contact with Father. During the review hearings involving Child, the trial court also heard Mother admit to past injuries of J.G. which she could not explain and for which she had failed to seek medical attention. There was also evidence presented that Child had sexual knowledge inappropriate for his age as he had attempted anal sex on another child in foster care. Also in the record is the fact that Mother and Father initially blamed Child for causing J.G.'s death, by jumping off furniture and landing on him, and that they conveyed that information to Child and other family members. Finally, due to her convictions for crimes involved in J.G.'s death and drug charges, Mother is serving consecutive sentences amounting to twelve years of incarceration in the women's prison.[6] It is appropriate to consider this fact, but it is not the sole basis for our decision under this issue. *See In re R.P.*, 498 N.W.2d 364, 368 (S.D.1993) ("Incarceration itself is not sufficient reason to terminate parental rights; however, the court may consider a parent's past conduct and present incarceration in the decision."); *In re B.A.M.*, 290 N.W.2d 498, 501 (S.D. 1980)("A parent's inability to perform his parental obligations because of imprisonment, the nature of the crime committed, as well as the person against whom the criminal act was perpetrated are all relevant to the issue of parental fitness.").

[¶ 26.] The psychologist working with Child, DSS supervisor and DSS social worker assigned to this family all recommended termination of Mother's parental rights. The record does not lack for sufficient evidence to support the trial court's decision in this regard.

[¶ 27.] Mother may not prevail under this, her final issue. State's issues will now be addressed.

[¶ 28.] **4. Whether the placement order violates SDCL 26–8A–27, and if so, whether this constitutes prejudicial error.**

[¶ 29.] SDCL 26–8A–27 provides in relevant part:

> Upon the entry of the final decree of disposition terminating the parental rights of both parents or of the surviving parent, the court *shall vest the Department of Social Services with the custody and guardianship of the person of the child for the purpose of placing the child for adoption* and authorizing appropriate personnel of the department to consent to adoption of the child without need for any notice or consent of any parent of the child.

(emphasis added). State argues the trial court did not honor this statutory mandate but dismissed DSS custody and placed Child with Grandparents in Washington. State argues this was done against DSS objections and what DSS believed to be a negative home study of Grandparents. State further notes that DSS in Washington has refused to monitor this placement under the Interstate Compact due to its disagreement with the placement.[7] State claims the placement violates the statutory mandate to vest custody and guardianship of Child with DSS for purposes of adoptive placement and is contrary to the best interests of Child.[8]

[¶ 30.] In *In re Z.Z.*, 494 N.W.2d 608 (S.D. 1992), this Court addressed this statutory mandate in a case involving a concerned grandfather's attempt to gain custody of his

---

6. *See* footnote 4, *supra.*

7. This information does not appear in the record.

8. Although irrelevant to disposition of this issue, State claims in its brief that DSS placement recommendations appear in the record through social worker's letter and Grandmother's testimony. This may be a misstatement of the record as there is no indication therein regarding what placement DSS would recommend or whether it was indeed ready to make a recommendation. State does not specifically refer to pages in the record where this information may appear and, later in argument under this issue, cites to exhibits that are not part of the record before us on appeal. The trial court did visit with DSS supervisor and social worker in chambers following presentation of evidence at the dispositional hearing on May 11, 1998, but this conversation was not made a part of the record.

grandson in a proceeding terminating his daughter's parental rights to her son. We held that "[u]nder this circumstance [termination of mother's parental rights], custody and guardianship of Son mandatorily vests with social services for the purpose of placing the child for adoption. SDCL 26–8A–27." *Id.* at 610. We further held the issue raised by the grandfather regarding his guardianship as an alternative to termination was moot as a consequence. *Id.* The facts pertaining to this issue in the present case and in *Z.Z.* are somewhat similar in that in both cases loving, able grandparents have expressed their sincere desire to parent the children and the grandparents in each case promised to keep the child away from its mother if so ordered by the trial court.

[¶ 31.] However, the language of SDCL 26–8A–27 is clear and the use of the word "shall" provides a trial court with no discretion in its decision. When "shall" is the operative verb in a statute, it is given "obligatory or mandatory" meaning. *In re Groseth Int'l, Inc.*, 442 N.W.2d 229, 231–32 (S.D.1989) (citing *Person v. Peterson*, 296 N.W.2d 537 (S.D.1980); *Tubbs v. Linn*, 75 S.D. 566, 70 N.W.2d 372 (1955); 2A Sutherland Stat. Const. § 57.03 at 643–44 (4th ed 1984); Sutton, *Use of "Shall" in Statutes*, 4 J. Marshall LQ 204 (1938), *reprinted in* 1A Sutherland Stat. Const. 691 (4th ed 1985)). In deciding this issue, we do not address whether placement with Grandmother was a proper placement but hold that the statutorily mandated procedure for placement was not followed. The trial court erred in ordering custody of Child with Grandmother pending open adoption by Grandparents.

[¶ 32.] **4. Whether the placement order violates SDCL 26–8A–27 and 25–6–17 regarding open adoptions.**

[¶ 33.] The trial court ordered that Grandparents be allowed to adopt Child and "that an open adoption provision be provided to allow [Mother] to have future contact with the child" but not take the child from Grandmother or have custody of the child at any time. This order violates the prohibition found in SDCL 25–6–17 regarding open adoption. This statute provides in relevant part:

> *The natural parents of an adopted child shall retain no rights or privileges to have visitation or other post-adoption contact with the child,* except in cases where a natural parent consents to the adoption of a child by the child's stepfather or stepmother who is the present spouse of the natural parent or in cases of voluntary termination where there is a written preadoption agreement between the natural parent or parents and the adoptive parents.

(emphasis added). This statute was amended in 1997 and in effect when the court filed its order of disposition on June 22, 1998.

[¶ 34.] As with SDCL 26–8A–27, this statutory language is clear and needs no interpretation by this Court. *Dahn v. Trownsell*, 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539 ("When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed."). There is no allowance for discretion by the trial court in the language quoted above. The trial court erred in ordering open adoption with visitation privileges to Mother.

[¶ 35.] Disposition of these issues renders consideration of State's remaining issues unnecessary.

[¶ 36.] We affirm the part of the order terminating Mother's parental rights and reverse the part of the order deciding placement of the Child and remand for entry of an order vesting custody and guardianship of Child with DSS pursuant to SDCL 26–8A–27 for purposes of adoption.

[¶ 37.] MILLER, Chief Justice, and SABERS, AMUNDSON, KONENKAMP and GILBERTSON, Justices, participating.