633 N.W.2d 603 (2001)
2001 SD 114
The PEOPLE of the State of South Dakota in the Interest of H.O., Minor Child,
And Concerning C.O. and J.O., Respondents.
No. 21842.
Supreme Court of South Dakota.
Considered on Briefs August 9, 2001.
Decided August 29, 2001.
Mark Barnett, Attorney General, Roxanne M. Johnson, Assistant Attorney General, Pierre, Attorneys for appellant State of South Dakota.
Rory King of Siegel, Barnett & Shutz, Aberdeen, Attorneys for appellees B.W. and K.W.
PER CURIAM.
[¶ 1.] The State appeals an order, entered over the objection of the Department of Social Services, that allowed a mother and father who had abused and neglected their child to both voluntarily terminate their parental rights and transfer those rights to the child's aunt and uncle for the purpose of adoption. Because SDCL ch. 26-8A mandates the procedures to be followed in abuse and neglect actions, we vacate the trial court's order and remand.

*604 FACTS AND PROCEDURE
[¶ 2.] H.O. was born December 29, 1998, weighing 7 pounds, 6 ounces. Her parents received in-home services in basic parenting skills from the Department of Social Services (DSS) and other service providers. H.O. failed to gain weight and the parents reported she had difficulty feeding and "spit up a lot." She was hospitalized on February 12, 1999, and diagnosed as a failure to thrive child. She gained some weight in the hospital, where it was discovered she did not have a gag reflex and was too weak to suck. She was also aspirating small amounts of fluid into her lungs.
[¶ 3.] In March, a gastrostomy feeding tube was surgically inserted into her stomach. Despite training in the specialized feeding techniques she now required, her parents were unable or unwilling to adequately care for her. H.O. failed to improve and her parents began refusing to allow service providers into their home. H.O. was removed from her parents' home on April 9, 1999, and placed in foster care. At age 4 months, she weighed 9 pounds, 9.5 ounces. She began gaining weight while in foster care where she also received physical, occupational and speech therapies. She remained underweight for her age and exhibited developmental delay, requiring continuing evaluation.
[¶ 4.] DSS filed an abuse and neglect petition on October 21, 1999. The parents admitted the allegations in the petition at a hearing on March 14, 2000, and the trial court adjudged H.O. to be an abused and neglected child. The court ordered continued custody with DSS and reunification efforts to be made with the family. The parents obtained psychological evaluations and counseling. The record shows that the Mother, with an I.Q. in the "mildly mentally retarded range," lacks the functional capability to care for H.O. Although her love for her child was apparent, it was recommended that she not care for her unsupervised. The Father works outside the home and believes that child-care is the mother's responsibility. He was found to be unwilling to care for H.O. Another concern was the Father's admitted sexual abuse of a six-year old niece twenty years earlier, which had been kept a family secret.
[¶ 5.] A final dispositional hearing was held on January 9, 2001. On this date, the parents petitioned to voluntarily terminate their parental rights and requested that the trial court place H.O. with her aunt and uncle, the Father's sister and her husband, in Colorado. The couple received a favorable evaluation from a home study performed by the Colorado DSS in cooperation with the South Dakota DSS. They indicated their intent to adopt H.O. The abuse and neglect action was left pending while the trial court considered the petition for voluntary termination and the parents' desire to transfer their parental rights.
[¶ 6.] On January 19, 2001, the trial court entered an order terminating the Mother's and Father's parental rights to H.O. and transferring those rights to her aunt and uncle, authorizing their consent to adopt H.O. without further notice to the Mother and Father "or any other person having such parental rights or interest in said child." The court ordered a transition period not to exceed three months.[1]
[¶ 7.] State appeals, raising the following issues:

*605 Whether the trial court circumvented SDCL 26-8A-26 and -27 by accepting the voluntary termination of parental rights while an abuse and neglect action was pending.
Whether the acceptance of voluntary termination and transfer of parental rights constituted a conditional termination not permitted under South Dakota law.
Whether the trial court erred by dismissing the parents and their attorneys from the proceeding while the abuse and neglect action was left pending.

ANALYSIS AND DECISION
[¶ 8.] Terminations of parental rights are strictly governed by statute in South Dakota. Voluntary terminations, when no abuse or neglect of the child has been alleged, proceed under SDCL ch. 25-5A. SDCL ch. 26-8A governs abuse and neglect proceedings and mandates that following a termination of parental rights, custody of the child vests with DSS for the purposes of adoptive placement. SDCL 26-8A-27; In re J.H., 1999 SD 36, 590 N.W.2d 473; see also In re Z.Z., 494 N.W.2d 608 (S.D.1992). This is not a directive trial courts may ignore. J.H., 1999 SD 36 at ¶ 31, 590 N.W.2d at 479. DSS's role in adoptive placement cannot be circumvented by parents filing a petition to voluntarily terminate their parental rights to effect a private adoption, after their child has been adjudged abused and neglected.
[¶ 9.] When there are allegations, and in this case an adjudication, of abuse and neglect, the State, in its role of parens patriae, steps in to protect the child. SDCL 26-8A-1; In re N.J.W., 273 N.W.2d 134, 137 (S.D.1978) ("The State, as parens patriae, takes a necessarily strong interest in the care and treatment of every child within its borders.") The Legislature has identified DSS as uniquely qualified to act for the State in this role. SDCL 26-8A-8, -9. The trial court usurped this role when it allowed the parents to evade the abuse and neglect proceeding and addressed their petition for voluntary termination in favor of the aunt and uncle. See In re J.M.J., 368 N.W.2d 602 (S.D.1985), reh'g granted, 379 N.W.2d 816 (S.D.1985) (trial court dismissed abuse and neglect action to consider petition for voluntary termination of parental rights filed at the initial hearing).
[¶ 10.] This is not simply a "procedural defect."[2] SDCL ch. 26-8A exists for the protection of the abused and neglected child, not the convenience of the parents, the attorneys, or the trial court. SDCL 25-5A-21, applying to voluntary terminations, provides that the chapter "shall not be treated or construed as exclusive of any other remedy authorized by law but as cumulative merely." The court lacked statutory authority to consider the petition for voluntary termination exclusively while abandoning the abuse and neglect action.
[¶ 11.] We need not address the State's remaining issues to decide this appeal. We vacate the order and remand for proceedings not inconsistent with this opinion.
[¶ 12.] MILLER, Chief Justice, and SABERS, AMUNDSON, KONENKAMP and GILBERTSON, Justices, participating.
NOTES
[1] The State asserts that after its notice of appeal was filed, the trial court permitted H.O. to be removed from South Dakota on March 31, 2001 and transferred to Colorado without further involvement by DSS.
[2] We have previously held the voluntary termination of parental rights provisions of SDCL ch. 25-5A are to be met with strict compliance. In re T.M.B., 416 N.W.2d 260, 262 (1987); In re J.M.J., supra. We can hold no less where termination is the result of an abuse and neglect proceeding that involves the same fundamental right to parent a child.